## McGill vs. Dowdle, Gibson & Co.

1. STATUTE OF LIMITATION: *Promise to pay debt of another.*
   A note was executed by one partner in the name of the partnership. Afterwards the other partner, on presentation of the note to him, promised to pay it, not denying that it was a partnership note. In a subsequent suit on it, he denied by answer that it was a partnership note, alleging that it was executed for the separate debt of the other partner, without his knowledge or consent. Held that the execution of the note was the only matter in issue, and that the promise to pay was admissible to prove it, and was not inadmissible as a parol promise to pay the debt of another, under the statute of frauds.
2. PARTNERS: *Who are.*
   If parties, after they become partners, have a common interest in the unsettled business of a former concern, or in its profits and losses, they are between themselves partners in that business.

APPEAL from *Little River* Circuit Court.

Hon. L. J. JOYNER, Circuit Judge.

*Williams & Battle*, for appellants.

HARRISON, J.:

This was an action by Dowdle, Gibson & Co. against John M. McGill and A. J. McGill, upon a note purporting to have been executed by them in their partnership and firm name of J. M. McGill & Bro., for $400, dated October 20th, 1875, and payable one day after date.

A. J. McGill made no defense, and judgment was taken against him by default.

John M. McGill in his answer averred that the note, though given in the firm name, was given by A. J. McGill for his several and individual debt, without his knowledge and consent, and denied that it was his note.

The issue was tried by the court, which found as conclusions of fact, that the note was made by A. J. McGill, personally, for goods purchased in his name by John M. McGill, ostensibly as his agent, from the plaintiffs, but in fact for the use and benefit of both defendants, and in respect to which they were partners : and that it was their joint note.

John M. McGill moved for a new trial, which motion was overruled, and judgment was entered against him ; whereupon he appealed.

The appellant testified in his own behalf ; that A. J. McGill, gave the note in settlement of a debt of his own to the plaintiffs for goods purchased from them whilst he was merchandising and doing business alone, and before the partnership between him and the appellant was formed.  The goods he said were purchased for A. J. McGill, who was his brother, by himself, as his agent, but he was not then his partner, and had no interest whatever in his business.  The note was given after they became partners, but in the absence of the appellant from home, and without his knowledge, and without any authority from him ; and when he returned and learned from A. J. McGill that he had given the firm's note for his debt to the plaintiffs, he expressed his dissatisfaction, and told him he had done wrong.

On cross-examination he admitted that the note was presented to him shortly after it was given by the plaintiff's attorney, and said, he may have promised to pay it, but did not remember distinctly whether he did or not ; and he admitted, that after the suit was brought, he requested the attorney of the plaintiffs' to take no further proceedings in it, until he should return from St. Louis, where he was then going ; and that, he told him he would stop over at Little Rock, and would see and settle with the plaintiffs.  He also admitted that he never at any time in-

formed the plaintiffs' attorney that A. J. McGill did not have authority from him to give the firm's note for the debt—or denied his liability on it.

He had before the goods were purchased, he said, filed his petition in bankruptcy, and had not then obtained his discharge, and that their partnership was not formed until after he had obtained it. That A. J. McGill, when the partnership was formed, had a small remnant of goods on hand, which with whatever other assets of his business and property he had, went into the firm. He had no knowledge, he said, of any liabilities of A. J. McGill, except the debt to the plaintiffs; if there were any they were not assumed or paid by the firm, and he was in no way liable for them.

William D. Hawkins, the plaintiffs' attorney testified for the plaintiffs, that about the date of the note an agent of the plaintiffs called at his office in Rocky Comfort, and showed him an account or note of A. J. McGill, and asked his opinion in regard to its collection. He told him it would be a better claim, if it was against J. M. McGill & Bro. The agent then left and went to the store of J. M. McGill & Bro., and soon after returned with the note sued on, which he left with the witness for collection, and told him that A. J. McGill had promised to pay it on the first of December. John M. McGill was then absent, but returned in a day or two, when he went to see him, and asked him if the note would be paid on the first of December. He replied that he could not pay it then, but would by the first of March. About the first of March he called on him again for payment of the note. He asked further time, and promised to pay it as soon as he was able. He was afterwards instructed by the plaintiff to bring suit on the note, and did so.

After the suit was commenced, John M. McGill came to him and requested that nothing further should be done in it, until

his return from St. Louis, and promised that he would stop over at Little Rock, where the plaintiffs did business, and would settle with them; and he accordingly took no further step in the suit until after his return. At no time did he deny to the witness his liability on the note, or intimate anything of the kind, and he never heard of his denying it until he filed his answer, which was done shortly after his return from St. Louis.

He had lived in Rocky Comfort, where the defendants did business, several years, and was living there when A. J. McGill was carrying on business in his own name, and knows when the change in the business from A. J, McGill to J. M. McGill & Bro. took place. When A. J. McGill was conducting business in his own name, John M. McGill was usually about the store. There was no change of store or house, and the business was conducted by the same parties and, as appeared, in the same way as before, and the change, so far as he was able to see, was in name only.

An exception was taken by the appellant to the ruling of the court compelling him, upon his cross-examination, to testify concerning the promises made by him to the plaintiffs' attorney to pay the note, and also in allowing the plaintiffs' witness to testify to the same facts; and the admission of this evidence is the first ground of the motion for a new trial.

It is insisted that these were promises to pay the debt of another, and not being in writing, were within the statute of frauds, and parol evidence of them inadmissible.

The action was on the note, of which he appeared on its face to be one of the joint makers, and against him as an original promissor, and not as promising to pay the debt of another.

The execution of the note was the only matter in issue, and this his promises very directly tended to prove.

The evidence was competent, and the ruling of the court in respect to its admission correct.

The second ground of the motion was that the court erred in its declarations of law. There were two, to which the appellant excepted. The first was a statement of the evidence, and not of the facts, which it tended to prove—followed by a conclusion therefrom, which was nothing more than a conclusion of facts. As an instruction to a jury, it would have been improper, as instructing them as to the weight of the evidence, but inasmuch as the trial was by the court, which had itself to weigh the evidence, it amounted to nothing.

The second was as follows :

"If A. J. McGill and John M. McGill had a community of interest in the losses and profits of the business conducted by A. J. McGill, after the firm of A. J. McGill & Bro. was formed, the court should find for the plaintiffs ; and this fact may be arrived at from the facts and circumstances of the whole case, if they warrant such a conclusion, although the said John M. McGill may have denied it.

This declaration, we think, was unobjectionable. If the defendants had, after they became partners, a common interest in the unsettled business of the former concern or in its profits and losses, as there stated, they were between themselves partners as to that business also. Sto. Part. secs. 16-18.

The remaining ground was, that the finding of the court was contrary to the evidence.

The testimony of the appellant was direct and positive, that the note was given for the sole debt of A. J. McGill, and as direct and positive in the denial of any authority to him to give such joint note. But, on the other hand, the evidence for the plaintiffs tended to prove that he had an interest in the goods, the purchase of which was the consideration for the note, and the authority of A. J. McGill from the appellant, in its execution.

It was the province of the court sitting as a jury, to determine the weight to be given to the evidence, and there was no want of evidence to warrant its finding.

The judgment is affirmed.